UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VARILEASE FINANCE, INC.
and VFI KR SPE I LLC,

      Plaintiffs,

vs.                            Case No. 18-CV-11390
                                     HON. GEORGE CARAM STEEH

EARTHCOLOR, INC., et al.,

      Defendants.

_____/

**OPINION AND ORDER GRANTING
DEFENDANTS MITTERA ENTITIES'
MOTION TO DISMISS AMENDED COMPLAINT
FOR LACK OF PERSONAL JURISDICTION (Doc. 14)**

This breach of contract action arises out of the alleged breach of a
lease agreement relating to printing and printing-related equipment valued
in excess of $3.5 million.  Two of the defendants are parties to the lease
agreement, others are sued in their capacities as guarantors of the lease,
and still others are sued under the theory of successor liability.  It is this
third group of defendants, known as the Mittera Entities, who have brought
the motion to dismiss for lack of personal jurisdiction now pending before
the court.  The matter has been fully briefed and oral argument was heard

on July 26, 2018 and informs this court's decision. This decision has been delayed at the parties' request based on their mediation efforts. For the reasons set forth below, the Mittera Entities' motion to dismiss for lack of personal jurisdiction shall be granted.

## I. Factual Background

This lawsuit arises out a Master Lease Agreement ("Lease") between Plaintiff Varilease Finance, Inc. ("Varilease") and Defendants Earthcolor Inc. ("Earthcolor") and Media Printing (the "Co-Lessee Defendants") entered on May 16, 2013. According to the Master Lease Agreement, the Co-Lessee Defendants leased certain printing and related equipment (the "Equipment") which was to be located in New Jersey and Florida and valued in excess of $3.5 million. The specific Equipment leased and the cost of all such Equipment is set forth in a series of lease schedules and certain amendments ("Schedules.").

## A.    The Parties

Plaintiff Varilease is in the business of leasing equipment to lessees. In 2015, Varilease assigned the Master Lease Agreement to Plaintiff VFI KR SPE I LLC, but remained the servicing agent for the Lease. (Doc. 16, Ex. C, D at ¶ 9).

There are seventeen defendants in this lawsuit. Six of the defendants make up the "Mittera Entities," and these defendants have brought the motion to dismiss for lack of personal jurisdiction which is now pending. Specifically, the Mittera Entities are comprised of (1) Mittera East, LLC, (2) Mittera Florida, LLC, (3) Mittera New Jersey, LLC, (4) Mittera New York, LLC, (5) Mittera Houston, LLC (collectively the "Mittera LLCs") and (6) Mittera Group, Inc. ("Mittera Group"). Mittera Group is a multi-platform print, marketing, and digital media company. All of the Mittera Entities are incorporated and have their principal place of business outside Michigan. It is undisputed that these entities do not have any property, offices, employees, or bank accounts in Michigan. Plaintiffs do not point to any contacts of these entities in Michigan, but allege that the Mittera Entities are subject to personal jurisdiction as they are successor corporations to EarthColor, and EarthColor agreed to a forum-selection-clause mandating that any suit involving the Master Lease Agreement be brought before the federal or state court in Oakland County, Michigan. Specifically, the Master Lease Agreement § 19(a) states that the parties would "SUBMIT TO THE JURISDICTION OF THE STATE AND/OR FEDERAL COURTS IN THE STATE OF MICHIGAN IN ALL MATTERS

RELATING TO THE LEASE [AND] THE EQUIPMENT," and that any dispute between or among the parties "SHALL BE TRIED BY A JUDGE ALONE BEFORE THE FEDERAL OR STATE COURTS IN OAKLAND COUNTY, MICHIGAN." (Doc. 16, Ex. A at § 19(a) at PageID 779).

The Mittera Entities deny that they are successor corporations to the EarthColor Defendants, in part, because the Asset Purchase Agreement, defined below, specifically exempted the Master Lease Agreement. (Doc. 14, Ex. 2 at § 1(b) PageID 591, Schedule 1(b) PageID 650). Also, the Mittera Entities did not acquire any stock or equity in the EarthColor Defendants or Media Printing.

On September 29, 2017, the Mittera LLCs, through their buyers' agent, Mittera Group, entered into an Asset Purchase Agreement with Defendant EarthColor Inc. and Media Printing and certain of their affiliates (together "EarthColor Group" or "EarthColor Defendants."). Those affiliates, who are listed as sellers on the Asset Purchase Agreement include Defendants Earth Thebault, Inc., Earth Color LLC,[1] Cedar

---

[1] The Complaint names EarthColor Group, LLC. It is not clear if this is the same as Earthcolor, LLC, as named in the Asset Purchase Agreement.

Graphics, Inc., Earth Color Houston, Inc., Earth Color New York, Inc., and Barton Press, Inc.  As part of the Asset Purchase Agreement, the sellers' agent was EarthColor.  In exchange for EarthColor assets, the Mittera Entities paid cash consideration.  (Doc. 14, Ex. 1 at ¶ 15, PageID 579). However, Mittera Group did not acquire any Earthcolor Group assets but merely acted as the buyer's agent.

In addition to the above-named defendants, Plaintiffs have also sued three other defendants: Defendant ECHoldco, Inc., EC Subco., Inc., and International Color Services Inc.  These three Defendants, as well as Defendants Barton Press, Cedar Graphics, Earth Color Houston, Earth Thebault, and Earthcolor Group are referred to as the "Guarantor Defendants."  They have been sued for breach of their guarantees that the lessees would perform their obligations under the Master Lease Agreement.

## B.    The Asset Purchase Agreement Choice-of-Law Provision

The Asset Purchase Agreement contains a choice-of-law provision which provides that it "shall be governed by and construed in accordance with the internal laws of the State of New Jersey."  (Doc. 16, Ex. G at § 24, PageID 885).

## C. Transition Services Agreement

At the same time that the parties entered into the Asset Purchase Agreement, the EarthColor Defendants and the Mittera Entities also executed a Transition Services Agreement whereby the EarthColor Defendants promised to provide the Mittera Entities with services, support, and employees to facilitate EarthColor's uninterrupted operation following the Asset Purchase Agreement.  (Doc. 16, Ex. F PageID 841-45, Ex. H PageID 960-995).  Annex A is an eight-and-a-half page list of EarthColor employees who would be providing these services.  (Doc. 16, Ex. H at Annex A PageID 983-92, names redacted).

## D.    Alleged Continuity of Business

Prior to the closing of the Asset Purchase Agreement, the EarthColor Defendants and Mittera Entities communicated with Varilease regarding the Master Lease Agreement.  (Doc. 16, Ex. I PageID 996-1003, D at ¶ 11 PageID 814).  According to Varilease's Vice President of Risk and Portfolio Management, Christina Athas, on September 28, 2017 (the day before the Asset Purchase Agreement was executed), the EarthColor Defendants and the Mittera Entities asked Varilease to "consent" to the merger and Mittera

requested a copy of the Master Lease Agreement. (Doc. 16, Ex. D at ¶ 11, PageID 814). Athas provided Mittera's and EarthColor's counsel with the Master Lease Agreement. *Id.* at ¶ 12, PageID 815. Athas asked for copies of Mittera's financial statements to verify its creditworthiness, but Mittera did not fully disclose its financial information and advised that "EarthColor will continue to make the lease payments." *Id.* at ¶ 13-15, PageID 815. EarthColor made the October, November, and December 2017 lease payments but then stopped. *Id.* at ¶ 16, PageID 815. In late 2017, EarthColor's CFO informed Athas that the EarthColor Defendants had become "shell companies." *Id.* at ¶ 17, PageID 815.

According to the Mittera Group's and EarthColor's websites, Mittera Group acquired EarthColor's assets and has continued business as usual at EarthColor locations. (Doc. 16, Ex. F at ¶ ¶ 7-11, PageID 843-44). Also, Mittera Group's website lists Tom Slaughter as "VP and GM, EarthColor-New Jersey" (Doc. 16, Ex. F at Ex. F. at ¶ 11, PageID 844), and he is also Mittera's General Counsel and manager of Mittera's Pomeroy facility. EarthColor's website lists its current address as 249 Pomeroy Road, Parsippany, New Jersey – which is the primary address of

EarthColor prior to the Asset Purchase Agreement, and the same address used by some of the Mittera Entities. (Doc. 16, Ex. K at PageID 1011).

Much of the equipment covered in the Master Lease Agreement is located at the 249 Pomeroy Road location. The Mittera Entities have been using that equipment. In March, 2018, Plaintiff Varilease retained Omni Capital Corporation ("Omni"), a professional asset recovery, repossession and remarketing firm, to visit the Pomeroy facility to inspect the printing equipment that had been leased to EarthColor. (Doc. 16 at Ex. N at ¶¶ 2, 5, PageID 1046). Omni's inspection confirmed that all of the printing equipment covered by the Master Lease Agreement located at that facility was in use. *Id.* at ¶ 9, PageID 1047. Slaughter, who is Mittera's General Counsel and manager of Mittera's Pomeroy facility, admitted that Varilease's equipment had been in use for several months. *Id.* at ¶ 10, PageID 1047. At the time of Omni's inspection, a large "EARTHCOLOR" sign was in front of the building, and another sign stating, "EARTH-THEBAULT/AN EARTHCOLOR COMPANY" was in the parking lot. *Id.* at ¶ 6, PageID 1046-47.

The inspector also visited 345 Walsh Drive, Parsippany, New Jersey (the "Walsh facility") and found that equipment covered in the Master Lease

Agreement was plugged in and ready for use, although it was not being used at the time of the inspection.  *Id.* at ¶¶ 12-15, PageID 1048.  A sign at the Walsh facility read, "EARTH-THEBAULT/AN EARTHCOLOR COMPANY."  *Id.* at ¶ 13, PageID 1048.

At oral argument, the Mittera Entities represented that they were using the equipment and would pay for fair use of the equipment minus the storage cost, that they did not want the right to rent the equipment, has replacement equipment ready to go, and is asking Plaintiffs to come and remove the equipment.  (Doc. 24 at PgID 1555-56).  The equipment takes up an entire room and moving it is expected to be costly.  *Id.* at PgID 1561.

### E.    Amended Complaint

The Amended Complaint alleges six counts: (1) breach of contract arising out of the Master Lease Agreement against EarthColor and Media Printing, (2) breach of contract arising out of the Master Lease Agreement against the Guarantor Defendants, (3) breach of contract arising out of the Master Lease Agreement against Mittera Entities under theory of successor liability, (4) breach of contract against the Mittera Guarantor Defendants and Mittera East under the doctrine of successor liability, (5) common law conversion against the Mittera Entities, and (6) statutory conversion against

the Mittera Entities.  The Complaint seeks specific performance and foreclosure of security interest and labels these requests for relief as separate counts.  As these are remedies sought and not specific claims, the court does not so characterize them as such here.  Plaintiffs originally filed suit in Oakland County Circuit Court Business Court, and Defendants timely removed the action here.

## II.  Standard of Law

The burden is on the plaintiff to establish that personal jurisdiction exists.  *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002).  Because the court is deciding the issue of personal jurisdiction without first holding an evidentiary hearing, the facts are construed in the light most favorable to the plaintiff, the nonmoving party.  *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir. 2002). The plaintiff "need only make a prima facie showing of jurisdiction." *Id.* (internal quotation marks and citation omitted).  Where the facts proffered by the defendant conflict with those offered by the plaintiff, the court disregards the defendant's facts for purposes of ruling on the motion. *Id.*  In the face of a properly supported motion for dismissal, however, the plaintiff "may not stand on [its] pleadings but must, by affidavit or otherwise, set forth specific facts showing that the

court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1457 (6th Cir. 1991).  To determine whether personal jurisdiction exists over a defendant, federal courts sitting in diversity apply the law of the forum state, subject to the limits of the Due Process Clause of the Fourteenth Amendment. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000).

## III. Analysis

The question now before the court is whether the Mittera Entities are subject to personal jurisdiction.  There is no dispute that these Defendants lack minimum contacts with the forum state, but Plaintiffs argue they are nevertheless subject to personal jurisdiction because they are successor corporations to the EarthColor Defendants.  If successor corporations, they may be subject to personal jurisdiction here based on the forum-selection-clause set forth in the Master Lease Agreement which requires that suit be filed in Michigan for any controversy arising under that Agreement.

Indeed, the parties do not dispute that the Sixth Circuit has held that personal jurisdiction may lie based on successor liability.  It is well settled that:

> it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is a . . . successor of a corporation that would be subject to personal jurisdiction in that court.

*Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008) (internal quotation marks and citations omitted). Here, the parties do not dispute that the EarthColor Defendants are subject to personal jurisdiction by virtue of the forum-selection-clause in the Master Lease Agreement. Thus, the question remains whether the Mittera Entities are successor corporations to the EarthColor Defendants such that they are subject to personal jurisdiction here also.

In order to determine the issue of successor liability, the first question is which law governs. Defendant argue in favor of Michigan law, and Plaintiffs argue in favor of New Jersey law. In any choice-of-law analysis, the court must ask whether there is an actual conflict between the laws of the various jurisdictions that arguably might apply. Here, it appears that such a conflict does exist. If Michigan law applies, successor liability may not be imposed because common ownership between the predecessor and successor is required and is lacking here. On the other hand, New Jersey law does not require common ownership, thus under New Jersey law it is

more likely that successor liability analysis will lead to the conclusion that the Mittera Entities are in fact successors of the EarthColor Defendants.

Plaintiffs argue that the choice-of-law clause in the Asset Purchase Agreement, which calls for the application of New Jersey law, controls. But the question of successor liability is a much broader inquiry than merely analyzing the Asset Purchase Agreement, which is just one narrow part of the equation. Under either Michigan or New Jersey law, in order to determine successor liability, the court needs to consider a myriad of factors, including continuity of management, personnel, physical location, assets, and general business operations; a cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible; assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor; and continuity of ownership/shareholders. *Woodrick v. Jack J. Burke Real Estate, Inc.*, 306 N.J. Super. 61, 73, 703 A.2d 306, 312 (App. Div. 1997); *see Stramaglia v. United States*, 377 F. App'x 472, 475 (6th Cir. 2010) (Michigan law regarding successor liability under the "mere continuation" exception requires that the court "examine the totality of the circumstances and engage in a multi-factor analysis"). Because the question of successor

liability requires analysis far more sweeping than merely considering the four corners of the Asset Purchase Agreement, the choice-of-law provision in that Agreement does not control the question of successor liability.[2]

In the Sixth Circuit, a federal court sitting in diversity must apply the law of the forum state to determine whether personal jurisdiction exists based on the theory of successor liability. *Thomson*, 545 F.3d at 362; *see also Williams v. Bowman Livestock Equip. Co.*, 927 F.2d 1128, 1132 (10th Cir. 1991) (court may impute a predecessor's contacts to a successor if *forum law* would hold the successor liable for the actions of its predecessor); *Opportunity Fund, LLC v. Epitome Sys., Inc.*, 912 F. Supp. 2d 531, 541 (S.D. Ohio 2012). Relying on the law of the forum state to determine whether successor liability forms the basis for personal jurisdiction is consistent with the general requirement that a federal court sitting in diversity applies the law of the forum state to determine whether personal jurisdiction exists. *SeeThompson*, 545 F.3d at 361. Accordingly,

---

[2] In the alternative, Plaintiffs argue New Jersey law applies under Section 302 of the Restatement (Second) of Conflicts which requires that suit be brought in the state with the most significant relationship to the occurrence and the parties. Plaintiffs have not cited to any case law to support the Restatement approach here.

the court must apply Michigan law to determine whether personal jurisdiction exists based on successor liability.

Under Michigan law, a purchaser of assets for cash does not assume successor liability unless one of five narrow exceptions applies. *Lakeview Commons v. Empower Yourself, LLC,* 290 Mich. App. 503, 507 (2010) (citing *Foster v. Cone–Blanchard Mach. Co.,* 460 Mich. 696, 702 (1999)); *see also C.T. Charlton & Assoc., Inc. v. Thule, Inc.,* 541 F. App'x 549, 552–53 (6th Cir. 2013). The Michigan Supreme Court has identified those five circumstances as:

> (1) where there is an express or implied assumption of liability; (2) where the transaction amounts to a consolidation or merger; (3) where the transaction was fraudulent; (4) where some of the elements of a purchase in good faith were lacking, or where the transfer was without consideration and the creditors of the transferor were not provided for; or (5) where the transferee corporation was a mere continuation or reincarnation of the old corporation.

*Craig v. Oakwood Hosp.,* 471 Mich. 67, 96-97 (2004) (footnote omitted); *see also Johnson v. Ventra Group, Inc.,* 191 F.3d 732, 743 (6th Cir. 1999). Here, Plaintiffs argue that the fifth exception applies, namely that the Mittera Entities were the "mere continuation" of the EarthColor Defendants.

"'Mere continuation' is a cousin of piercing the corporate veil, and thus [is] targeted at limiting abuse of the corporate form.'" *C.T. Charlton*, 541 F. App'x at 554.  Under Michigan law, to determine whether successor liability arises under the "mere continuation" theory, the court must "examine the totality of the circumstances and engage in a multi-factor analysis." *Stramaglia*, 377 F. App'x at 475.  But crucial to this inquiry is the requirement that there is (1) common ownership between the predecessor and successor; and (2) transfer of substantially all of the assets of the predecessor to the successor.  *Id.; see also In re Clements*, 521 B.R. 231, 258 (E.D. Mich. 2014) (collecting Michigan cases).  The Sixth Circuit, in applying Michigan law, has stated that in considering the "mere continuation" doctrine, "courts will look to the totality of the circumstances but only if the 'indispensable' requirements of common ownership and a transfer of substantially all assets are met first." *C.T. Charlton*, 541 F. App'x at 554 (citing *Stramalgia*, 377 F.3d at 475); *see also Shue & Voeks, Inc. v. Amenity Design & Mfg., Inc.*, 203 Mich. App. 124, 128 (1993); *Retail Works Funding LLC v. Tubby's Sub Shops Inc.*, No. 332453,  2017 WL 3798500, at *6 (Mich. Ct. App. 2017).  Here, there is no allegation of common ownership.

To understand how Michigan courts have interpreted the successor liability issue, a review of the Michigan Supreme Court's seminal decision in *Turner v. Bituminous Cas. Co.*, 397 Mich. 406 (1976) is in order. In that case, the court considered successor liability in the products liability context and decided that common ownership was one factor for the court to consider, but was not dispositive of the question of whether a successor corporation can be liable to an injured party arising out of the activities of a predecessor. *Id.* at 429-30. *Turner* established a new rule, known as the "continuity of enterprise" exception which applies only in the products liability context. Under that doctrine, the Michigan Supreme Court modified the de-factor merger doctrine which imposes successor liability when four requirements are met: (1) continuation of the enterprise, (2) continuity of shareholders, (3) ending of ordinary business operations by the seller, and (4) assumption of liabilities and obligations necessary for uninterrupted continuation of business operations by the purchaser. *Id.* at 420. The court dropped the "continuity of shareholders" requirement, requiring only factors 1, 3, and 4 to establish successor liability in the products liability context. In *Turner*, the Michigan Supreme Court differentiated successor liability analysis in the products liability versus commercial context based

on policy concerns which make it desirable to compensate an injured person and place the risk of defective products on the manufacturer rather than the consumer. *Id.* at 424.

The Michigan Supreme Court expounded on the difference between successor liability in the products liability context and the commercial context in *Foster v. Cone-Blanchard Mach. Co.*, 460 Mich. 696 (1999). In *Foster*, the court explained, "[t]he traditional rule reflects the general policy of the corporate contractual world that liabilities adhere to and follow the corporate entity. It serves to protect creditors and shareholders, to facilitate determination of tax responsibilities, and to promote the free alienability of business assets." *Id.* at 703. More recently, the Michigan Supreme Court's terse one-page opinion in *Starks v. Michigan Welding Specialists, Inc.*, 477 Mich. 922 (2006) suggests that Michigan applies the traditional "mere continuation" doctrine quite narrowly. In that case, the Court of Appeals considered the "mere continuation" doctrine in the commercial context and found that no successor liability existed because the predecessor corporation ceased to exist before its successor purchased its assets, the successor notified its customers that the predecessor had gone out of business, and that it was a new company with different ownership. *Starks*

*v. Michigan Welding Specialists, Inc.*, No. 257127, 2005 WL 3179647, at *4

(Mich. Ct. App.  Nov. 29, 2005) (per curiam).  In its one-paragraph opinion,

the Michigan Supreme Court affirmed, stating:

> Where, as here, a successor corporation acquires the
> assets of a predecessor corporation and does not
> explicitly assume the liabilities of the predecessor,
> the traditional rule of corporate successor non-liability applies.
> See, *Foster v. Cone–Blanchard Machine Co.,* 460 Mich.
> 696, 702, 597 N.W.2d 506 (1999). Because an exception
> designed to protect injured victims of defective products
> rests upon policy reasons not applicable to a judgment
> creditor, the Court declines to expand the exception to the
> traditional rule set forth in *Turner v. Bituminous Casualty
> Co.,* 397 Mich. 406, 244 N.W.2d 873 (1976), to cases in
> which the plaintiff is a judgment creditor.

*Starks*, 477 Mich. 922.

Plaintiffs, on the other hand, argue that a review of Michigan case law

leads to the opposite conclusion that common ownership is not required,

that the Sixth Circuit's decision in *Stramaglia*, *supra*, merely described

Michigan's common ownership requirement as "apparent" rather than

definitively, and that the Sixth Circuit's conclusion that such a requirement

exists is erroneous.  In support of this argument, Plaintiffs rely on *Craig*,

*supra*, where the Michigan Supreme Court stressed that the "doctrine of

successor liability is 'derived from equitable principles.'" 471 Mich. at 77

(citation omitted).  In that case, the court found that de facto merger did not

exist because there was no continuity of shareholders, and then separately analyzed whether one defendant was the "mere continuation" of another defendant. The court found no liability under the "mere continuation" doctrine either because that theory of liability does not exist in the medical malpractice context, plaintiff had already recovered against other defendants thus, the policy reasons supporting application of the doctrine did not exist, and that the alleged successor corporation did not carry on the same core functions as its predecessor. *Id.* at 98-99. Plaintiffs argue that because the court considered other factors pursuant to the "mere continuation" theory, although common ownership was lacking, suggests that the lack of common ownership was not dispositive. But Plaintiffs' argument that the Michigan Supreme Court's decision in *Craig* suggests common ownership is not an indispensable prerequisite for successor liability under the "mere continuation" doctrine is unavailing.

In *Craig*, the court considered whether to expand *Turner's* "continuing enterprise" doctrine which was first established in the products liability context, to the medical malpractice context, but elected not to do so. Like *Turner*, *Craig* involved an injured individual plaintiff, not a corporation. The instant matter, on the other hand, involves a purely commercial dispute

involving corporate parties. There is even less reason to extend *Turner's* relaxation of the common ownership requirement to the facts of this case than in *Craig* as the court here is addressing a purely contractual dispute, and unlike *Turner* which sought to protect an individual consumer harmed by a defective product against a successor manufacturer, here, there is no policy reason which would justify special protection to the Plaintiff corporations. Considering that the Michigan Supreme Court declined to extend *Turner's* relaxation of the common ownership requirement to determine successor liability in the medical malpractice context in *Craig*, suggests that it is even more unlikely it would relax the common ownership prerequisite in the purely commercial context.

Plaintiffs argue that *Foster, supra*, stands for the proposition that Michigan courts impose no bright line rule that common ownership is a prerequisite under the "mere continuation" doctrine, and that the court must "examine[] the nature of the transaction between predecessor and successor corporations." 460 Mich. at 702. *Foster*, however, addressed the concept of the "continuity of enterprise" doctrine which exists solely in the products liability context. In that case, the Michigan Supreme Court noted that the traditional rules of successor liability at play in the

commercial as opposed to tort law context, when a purchase is accomplished by an exchange of cash for assets, as took place here, are construed narrowly. *Id.* at 702-03.

Moreover, in the Asset Purchase Agreement, the Mittera LLCs expressly disclaimed any interest in the Equipment or EarthColor Group's rights or obligations under the Equipment Lease or Guaranties. The "Excluded Assets" schedule to the Asset Purchase Agreement specifically lists the Equipment Lease, and each supplement to it, as agreements that would not be transferred to the Mittera LLCs. (Asset Purchase Agreement, Sched. 1(b), Doc. 16, Ex. G at PgId 915). And the "Assumed Liabilities" schedule to the Asset Purchase Agreement contains no reference to the Guarantees. (*Id.* at Scheds. 1(c), 2(a)(v); Doc. 16, Ex. G at PgID 940-44, 946). Also, Plaintiffs have not alleged any facts to suggest that the Mittera LLCs purchased the assets "without consideration" to EarthColor Group. The Asset Purchase Agreement followed a competitive bidding process and resulted from arm's-length negotiations between sophisticated corporations represented by separate counsel. (Doc. 14, Ex. 1 at ¶¶ 12-13).

Finally, it is undisputed that the Mittera LLCS, not Mittera Group, bought assets from EarthColor Group.  Plaintiffs have cited no authority for the proposition that Mittera Group is subject to personal jurisdiction here based on assets purchased by its subsidiaries.

## IV. Conclusion

For the reasons set forth above, Defendants Mittera Entities' motion to dismiss for lack of personal jurisdiction (Doc. 14) is GRANTED and Defendant (1) Mittera Group, Inc., (2) Mittera East, LLC, (3) Mittera Florida, LLC, (4) Mittera New Jersey, LLC, (5) Mittera New York, LLC, and (6) Mittera Houston, LLC are DISMISSED.  The court reaches no decision whether the Mittera Entities may be liable as successor corporations under New Jersey law.  Having found that personal jurisdiction is lacking as to these Defendants, the court does not reach Defendants' alternative argument that the court should decline to exercise jurisdiction under the doctrine of *forum non conveniens*.

IT IS SO ORDERED.

Dated:  January 10, 2019

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Certificate of Service

Copies of this Opinion and Order were served upon attorneys of record on January 10, 2019, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk